```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNESTO SANTIAGO,              )
                               )
           Plaintiff,          )   Civil Action No. 04-335E
                               )
     v.                        )   JUDGE McLAUGHLIN
                               )   MAGISTRATE JUDGE BAXTER
UNITED STATES OF AMERICA,      )
                               )   ELECTRONICALLY FILED
           Defendant.          )
```

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION**

AND NOW, comes the Defendant, United States of America (hereinafter referred to as "the Defendant"), by its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Paul E. Skirtich, Assistant United States Attorney for said District, and files its Response to Plaintiff's Motion for Reconsideration:

Plaintiff has filed his Motion for Reconsideration of this Court's Order denying injunctive relief to prevent future retaliation (hereinafter "Motion"). Plaintiff's Motion should be denied for failure to meet the standards for equitable relief.

### I. PLAINTIFF'S MOTION

Plaintiff maintains that actions of officials at FCI-McKean (McKean) show a pattern of retaliation. (See Plaintiff's Motion, 2). It is important to note that Plaintiff believes that he has been placed into the Segregated Housing Unit (SHU) for filing a

tort claim against the medical staff at McKean. (Motion, 2, 4). His evidence of "retaliation" is alleged as follows:

    (1)  Delay in receiving two (2) legal calls from his court-appointed attorney (Covington & Burling, Washington, D.C.) in a habeas appeal currently pending in the Third Circuit (Motion, 4);

    (2)  No access to law books/materials in the SHU, not being able to get copies of his documents and/or Bureau of Prisons program statements and not allowing Plaintiff to file administrative remedies (Motion, 3);

    (3)  Refusal by Bureau of Prisons (BOP) staff to accept outgoing legal mail plus an "assault" with the package of mail (Motion, 7);

    (4)  Denial of three (3) "sensitive" administrative remedies concerning the problems with the SHU law library, access to law books, copying of documents, and rude behavior by BOP Staff Member Strade; the "assault" by Unit Manager Tronetti with the mail package; and the failure to respond to Plaintiff's inmate requests. (Motion, 9).

## II.  STATEMENT OF FACTS

On April 26, 2005, Plaintiff received the response to his BP-8 complaint of being housed in the SHU in retaliation for the lawsuit against prison medical staff from the Warden at McKean. (Motion, 4). In it, Plaintiff learned that he was placed in the

2

SHU for being disruptive and involved in a food boycott at the prison. (Motion, 4, Plaintiff's Exhibit F); (See Declaration of Michael D. Tafelski, attached hereto and marked as Exhibit 1, para. 2, 10, 12). On May 17, 2005, Plaintiff received a response from McKean officials allowing him to retain his civil docket papers. (Motion, 4, 5). On June 14, 2005, Plaintiff received a response to his June 1, 2005 BP-8 concerning the placement of copied legal materials in the SHU law library and unprofessional behavior. (Motion, 5, Plaintiff's Exhibit H). On July 7, 2005, Plaintiff received a response to his BP-8. (Motion, 6). On August 2, 2005, Plaintiff learned that his earlier-filed BP-9 (July 17, 2005) complaint concerning access to legal materials, copies, and the SHU law library was rejected. (Motion, 6). Plaintiff admitted that his three (3) sensitive BP-8 forms were denied by the Regional Office of the BOP and that he has appealed these decisions to "Washington". (Motion, 9).

### III.   LEGAL STANDARDS FOR INJUNCTIVE RELIEF

A.   Plaintiff Has Not Met the Requirements for a Preliminary Injunction.

When determining whether an injunction should be granted, the Third Circuit uses a four-part test wherein the movant must show:

**(1) the likelihood of the movant's success on the merits.** To satisfy the first prong of the preliminary injunction test, a movant must demonstrate a

3

"reasonable probability of eventual success on in the litigation." Barclay's Business Credit Inc. v. Four Winds Plaza Partnership, 938 F.Supp. 304, 307 (3d Cir. 1996) *quoting* Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). "It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a *prima facie case showing a reasonable probability that it will prevail on the merits."* Barclay's Business Credit, at 308, *quoting* Oburn v. Shapp, 521 F.2d 142, 147-48 (3d Cir. 1975)(emphasis added)).

In his Motion for Reconsideration, Plaintiff does mention he will prevail but does not supply any facts or documents to support his assertions. Thus, Plaintiff has not shown a reasonable probability of success on the merits.

**(2) the extent of the irreparable injury from the alleged misconduct.** The irreparable injury requirement is established by showing the Plaintiff will suffer harm that "cannot be redressed by a legal or equitable remedy following trial." Instant Air Freight Company v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)(a preliminary injunction must be the only way of protecting the Plaintiff from the harm). Hoe v. Casey,

4

868 F.3d 69, 72 (3d Cir. 1989), cert. denied, 493 U.S. 848 (1989); ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)(irreparable injury explained as more than merely serious or substantial harm). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for...'" Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994)(citations omitted). Additionally, the claimed injury "...cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa. 1995). An injunction is not to be issued "...simply to eliminate a possibility of a remote future injury..." Acierno at 655 (citation omitted)).

In his Motion, Plaintiff alleges that he will suffer irreparable injury because (1) original documents may disappear; (2) no access to law books, copies, or program statements; (3) not being allowed to file administrative remedies; and (4) placement in SHU on a fabricated report.

Plaintiff's allegations fail to meet the standard for various reasons. Initially, Plaintiff's fears of disappearing documents is speculative. Further, Plaintiff has admitted receiving copies of requested legal documents since he complained about the money spent to secure same. Moreover, BOP officials have implemented procedures to minimize or eliminate the theft of

copied materials earmarked for Plaintiff. Thirdly, 36 filed remedies by Plaintiff refutes his assertion of being blocked from the administrative remedy pipeline. (Exhibit 1, para. 8). Finally, in March 2005, reasons for Plaintiff's placement in the SHU were given to him, reasons not even remotely related to retaliation for filing a federal tort claims action. (Exhibit 1, Attachment 4, "Administrative Detention Order").

**(3) the extent of the harm to the non-movant if the preliminary injunction is issued; and**

**(4) the effect on the public interest.**

> The United States Congress has delegated the operation, management and regulation of the Federal Prison System has been delegated to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96. This authority necessarily includes the ability to conduct searches of inmate housing units. 28 C.F.R. §§ 552.10, 552.14. The Supreme Court has continuously stressed that "...[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment. Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims." <u>Sandin v. Conner</u>, 115 S.Ct. 2293, 2299 (1995). Public policy demands that federal courts

>             refrain from involvement with the day-to-day management
>             of prison life.  Id.  Plaintiff's request for a
>             preliminary injunction would not further public policy
>             because his requests necessarily involve this Court in
>             the "day-to-day management of [the] prison[]..."

Sandin v. Conner, 115 S.Ct. at 2299; (Clean Ocean Action v. York, 57 F.3d 328,331 (3d Cir. 1995)); (Opticians Ass'n of American v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1995).)  (The preliminary injunction is only to be granted in extraordinary circumstances.)  (See Hoxworth v. Blinder, Robinson & Company, Inc., 903 F.2d 186, 189 (3d Cir. 1990).) (The injunction will issue only if the Plaintiff produces evidence sufficient to convince the District Court that all four factors favor preliminary relief.)  Merchant & Evans v. Roosevelt Building Products Company, Inc., 963 F.2d 628, 632 (3d Cir. 1992).

A preliminary injunction cannot be granted because the record does not support a finding of likelihood of success on the merits, irreparable injury to the Plaintiff, and effect on the public interest.  If the record does not support such a finding, then a preliminary injunction cannot be granted.  Marxe v. Jackson, 833 F.2d 1121 (3d Cir. 1987).  Without a finding of these important factors, no hearing on the matter is required. If anything, the evidence shows that Plaintiff has filed numerous

administrative remedy requests and appeals.  The submissions that have been rejected were rejected pursuant to policy and/or failure to file in the proper forum.  Based on the foregoing, it is requested that Plaintiff's motion for a preliminary injunction be denied.

Additionally, Plaintiff may seek <u>legal</u> redress for these incidents in a new law suit, but they are not relevant to the claims alleged in this civil action.

### B. Delay of Legal Phone Calls

For the sake of argument and taking all of Plaintiff's allegations as true for purposes of this Response, Plaintiff has shown no prejudice to his pending habeas case or to himself because of the delay in making/receiving two (2) legal calls from his Court-appointed attorney concerning his appeal.  At deposition, Plaintiff admitted that an outcome is still pending in his habeas case; thus, Plaintiff's case has suffered no harm to date.  Further, Plaintiff is represented in this matter by counsel from a prestigious law firm in Washington, D.C., who is surely capable of bringing evidence of mistreatment, prejudice, or outright violative behavior to this Court given that Plaintiff noticed counsel of his predicament.  (Motion, 8).  Clearly, Plaintiff has access, by the above means, to this Court and any appropriate legal remedies.  To date, counsel from Covington & Burling has not alerted this Court of any alleged wrongdoing or

8

prejudice that Plaintiff has suffered. Therefore, Plaintiff has failed to show irreparable harm and/or that access to this Court is blocked, and his Motion on this basis must fail.

    C.   <u>Access to Legal Materials</u>

The crux of Plaintiff's Motion and argument is his seeming inability to gain access to legal materials while housed in the SHU and/or being mistreated in the process.

As to the alleged mistreatment, prison officials interviewed and determined that Officer Strade did not treat Plaintiff rudely and unprofessionally. (See October 4, 2005 BP-8 ½ Response of Doug Glenn, attached hereto and marked as Exhibit 2, para. 1).

As to access to copied legal materials, Plaintiff claims that he cannot get copies of requested materials. Plaintiff failed to provide evidence of what materials were requested on what dates to show a record of how officials are violating their own copying procedure. Thus, Plaintiff failed to show evidence of how he could prevail on this basis at an injunction hearing; he did not because he cannot.

Rather, prison officials have copied Plaintiff's requested materials when Plaintiff followed proper prison procedure. (See "Procedure to Request Copies of Legal Materials," attached hereto and marked as Exhibit 3); (See Declaration of Dennis Flatt, attached hereto and marked as Exhibit 4, para. 3, 4, 5); (See October 4, 2005 BP-8 ½ Response of Doug Glenn, attached hereto

and marked as Exhibit 2, para. 1). Indeed, Plaintiff confirmed at deposition that he has received copies of many pages of legal cases and materials; he regrets not having tracked the amount of money he paid for copies, as he could not estimate the money paid in copying charges but said it was considerable. (Plaintiff's Deposition of November 2, 2005). It appears that Plaintiff's main complaint is his inability to get copies made when he wants or in his timeframe. Yet, prison officials must have a system to copy and distribute materials in an orderly manner while still allowing officers adequate time to perform their duties of maintaining safety and order throughout the prison.

  Notwithstanding the above argument, however, prison officials have attempted to improve the system for retrieval of materials in the SHU. The officials at McKean have placed a locker in the SHU legal area under lock and key. (See Exhibit 1, para. 11). Copied materials will be placed in folders dedicated to each inmate and placed in the locker. In this way, legal materials will be produced for the inmate when he has access to the legal area in the SHU. No other inmate will be able to access legal materials placed in another inmate's file; officers, not inmates, will have access to the locker. This system went into effect in October 2005. (Exhibit 1, para. 11).

D.   <u>Failure to Accept Prison Administrative Complaints</u>

Plaintiff has also alleged that officials are ignoring his administrative complaints, and thus, he cannot advance his complaints through the prison administrative system.

At McKean, an inmate had to file an "Informal Resolution Form" (BP-8) prior to initiating the formal administrative remedy process. (See Exhibit 1, para. 7). Using this system, an inmate completed a BP-8 and handed it to a member of the prison staff, including his Unit Team. Once received, the Unit Team had a duty to answer the inmate's form. If resolution is not reached, an inmate then had access to the formal administrative remedy procedure. (Exhibit 1, para. 7).

It is important to note that Plaintiff, by his own hand, received at least five (5) responses from prison officials for complaints he had filed at McKean or the Regional Office. (Motion, p. 4, 5, 6, 8, 9). Plaintiff's argument must be refined, then, that he did not receive responses to every complaint that he filed. The staff at McKean respectfully denies this allegation. (See October 4, 2005 BP-8 ½ Response of Doug Glenn, attached hereto and marked as Exhibit 5). Rather, Plaintiff has filed thirty-six (36) administrative remedies while housed at McKean, some successfully and some not, for failure to file in satisfaction of filing requirements. (See Exhibit 1, para. 8, 9). Further, at times, Plaintiff filed in the wrong

forum to properly initiate a response. (See October 4, 2005 BP-8 ½ Response of Doug Glenn, attached hereto and marked as Exhibit 6). To the contrary, the dates of response as recited by Plaintiff in his Motion and gleaned from his exhibits show that officials promptly responded to his allegations or indicated that Plaintiff's filings were defective. (See Exhibit 1, para. 9). Plaintiff has the burden of proof and must provide evidence that he filed responses which went unanswered; assertions without further proof fail to show a preponderance of evidence that Plaintiff would prevail at a hearing for injunctive relief. To this end, then, Plaintiff's request for relief on this cause must be denied.

    Yet, both sides suffer in the same manner with BP-8's since individual forms are not tracked by prison officials. In other words, Plaintiff can claim that he completed and delivered a BP-8 when he did not, and prison officials can aver a response was penned each and every time when it was not. Again, officials at McKean have implemented a system whereby each BP-8 is marked with a unique identifying number to better track the filing of a BP-8, the acknowledged start of the informal administrative remedy system. (See Exhibit 1 (Tafelski Declaration), Attachment #2, "Administrative Remedy Procedures for Inmates,"
p. 2). Thus, since future requests for informal resolution by Plaintiff will have to be answered, each inmate at McKean is

12

assured each and every informal request to the prison administrative system will be answered.

As to the Plaintiff's claim with the three (3) "sensitive" complaints, Plaintiff failed to file the complaints in the correct forum, that is, McKean. (Motion, Plaintiff's Exhibits A, B, C). Rather, Plaintiff filed the complaints directly with the Regional Office, who promptly rejected the group for ministerial violations; the Regional Office never entertained the substance of Plaintiff's complaints due to their "appellate" duties. Officials clearly informed Plaintiff of his error and gave him sufficient time to correct the error by refiling the complaints at McKean within the allotted time, yet Plaintiff failed to timely refile any of the three (3) "sensitive" complaints. Plaintiff admitted at deposition that he knew how to file a BP-8 and BP-9.

      E.    <u>Refusal to Accept Outgoing Legal Mail</u>

Plaintiff's final piece of "retaliatory" evidence is the refusal of Deanna Tronetti to review his 2 ½ pounds of legal documents for shipping during her rounds at the SHU and the resultant alleged shove of the package into his face by Ms. Tronetti. Ms. Tronetti flatly denies the claims of Plaintiff. (See Declaration of Deanna Tronetti, attached hereto and marked as Exhibit 7, para. 3, 4, 5). At worst, even if Plaintiff's claims are accepted as true for sake of argument,

Plaintiff's claim is *de minimis*, too trivial for action by this Court. Plaintiff admitted that Ms. Tronetti did not injure him with the package; rather, he claims he would have faced assault charges if he committed the same act to her, and Ms. Tronetti should face the same "music." Plaintiff did not claim that his package was never mailed; he did not because he cannot. Plaintiff did not claim that he has suffered prejudice by Ms. Tronetti's refusal to accept the packet; he did not, because again, he cannot.

Perspective answers many inquiries, and a look at this situation yields the same analysis. Ms. Tronetti was making her rounds in the SHU at the time Plaintiff requested and/or demanded that she accept and review the package so it could be sent. (Exhibit 7, para. 4). Ms. Tronetti felt Plaintiff was insolent in his tone but overlooked it and simply offered to review the packet at a later time, which was refused. (Exhibit 7, para. 4); (BP-8 ½ Response of Doug Glenn, dated October 4, 2005, attached hereto and marked as Exhibit 8). Her other duties precluded Ms. Tronetti from reviewing the package when the Plaintiff asked. (Exhibit 7, para. 4). Plaintiff was miffed because he wanted the package inspected and sent then; Ms. Tronetti was miffed because the Plaintiff expected her to stop her duties, inspect the package, and carry it to the mail room for shipment. Ms. Tronetti had to conduct her duties with several other

14

inmates; Plaintiff did not understand that stopping then and inspecting the package by Ms. Tronetti would allow other inmates to conclude that they could disrupt Ms. Tronetti in the same fashion.

Plaintiff admitted that he had no evidence that Ms. Tronetti was retaliating for his lawsuit against the medical staff. Plaintiff has none because none exists. (Exhibit 7, para. 6). Finally, Plaintiff was placed in the SHU on March 10, 2005, on Administrative Detention status for copying a letter telling other inmates not to attend lunch on February 10, 2005. (See Exhibit 1, para. 10, 12). Plaintiff has appealed this order, which is still pending. Regardless, BOP officials did not retaliate against Plaintiff for filing his federal tort claim. As such, Plaintiff cannot show the likelihood of his success at a preliminary hearing.

In summary, this Court should deny Plaintiff's Motion for Reconsideration at this time. Plaintiff's 36 filed administrative remedies undercuts his argument that he has no access to the administrative remedy process, and ultimately, to the Court System. Plaintiff's pending appeal to the Northern Region of the BOP is further proof of his access. (See Exhibit 1, para. 10).

    WHEREFORE, based upon the above, Plaintiff asks that this Court deny Plaintiff's Motion for Reconsideration.

                                        Respectfully submitted,

                                        MARY BETH BUCHANAN
                                        United States Attorney

                                        <u>s/Paul E. Skirtich</u>
                                        PAUL E. SKIRTICH
                                        Assistant U.S. Attorney
                                        U.S. Post Office & Courthouse
                                        700 Grant Street, Suite 4000
                                        Pittsburgh, PA 15219
                                        (412) 894-7418
                                        PA ID No. 30440

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the within Defendant's Response to Plaintiff's Motion for Reconsideration was electronically filed and/or served by postage-paid U.S. Mail to and upon the following:

>Sadrick Donaldson
>Register No. 20102-018
>FCI Allenwood
>Post Office Box 2000, 4-B
>White Deer, PA 17887-2000

                                        <u>s/Paul E. Skirtich</u>
                                        PAUL E. SKIRTICH
                                        Assistant U.S. Attorney

Dated:  November 15, 2005