IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS NYHUIS,              )
        Plaintiff    )
                             )
    v.                       )   CIVIL ACTION NO. 00-232 ERIE
                             )
UNITED STATES OF AMERICA,    )
        Defendant    )

HEARING ON PRETRIAL MOTIONS

Proceedings held before the HONORABLE SEAN J. McLAUGHLIN, U.S. District Judge, in Judge's Chambers, U.S. Courthouse, Erie, Pennsylvania, on Monday, December 13, 2004.

APPEARANCES:

DOUGLAS NYHUIS, Plaintiff herein, (via Phone), appearing Pro Se.

CHRISTY C. WIEGAND, Assistant United States Attorney, (via Phone), appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

## P R O C E E D I N G S

(Whereupon, the proceedings began at 1:00 p.m., on Monday, December 13, 2004, in Judge's Chambers.)

THE COURT: All right, I have Ms. Wiegand and Mr. Nyhuis on the line. I have before me today the defendant's second renewed motion for summary judgment. And the plaintiff's motion for enlargement of time to obtain and file an expert medical report. And I think what I'm going to do, Ms. Wiegand, is let you go first and briefly tell me on the record the basis for your second renewed motion?

MS. WIEGAND: Your Honor, we are renewing our motion for summary judgment on the basis that Mr. Nyhuis has not obtained a medical expert in support of his claims and under Pennsylvania law he cannot proceed passed summary judgment. The court has granted Mr. Nyhuis ample time to obtain an expert and to file an expert report. And the court had also appointed counsel in order to assist him in obtaining an expert, and he has not obtained an expert to date. And it's the government's position that the case should proceed to summary judgment.

THE COURT: All right. Mr. Nyhuis, I guess to a certain extent your motion for enlargement of time to obtain and file an expert report is in response to the government's renewed motion for summary judgment. But go ahead and tell me

1  about your request for enlargement of time?
2          MR. NYHUIS:  I'm requesting enlargement of time
3  because I originally was told that an attorney in Pittsburgh
4  would be able to --
5          THE COURT:  You were told this by an attorney?
6          MR. NYHUIS:  Yes.  But I've since obtained a letter
7  from the attorney himself.  I've gotten his permission to use
8  his name if you need his name.  I wanted to make sure the court
9  was clear that he wasn't representing me, he was just helping
10 me in my efforts to obtain a report.  I was under the
11 understanding that he would be able to do that.  It took a
12 while to get copies together of the different documents I
13 wanted him to review because the original appointed counsel
14 even failed to communicate with me at any point in time or to
15 even let me know what was going on.  He only sent the
16 government's motion for summary judgment to the experts.  I
17 felt a little bit slighted on that.
18         THE COURT:  Let me cut right to the chase, sir.
19 Right now is there anything -- you indicated that this other
20 attorney wrote a letter -- and indicated what?
21         MR. NYHUIS:  He said he would not, the person he had
22 in mind, originally had in mind, worked for the same firm that
23 Dr. Kann worked for, which the government used.  You've seen my
24 motion in opposition to the renewed motion for summary
25 judgment?

1           THE COURT:  Yes, I have.
2           MR. NYHUIS:  Okay.  And at that point said that he
3   had someone else in mind.  I guess it came down to the point
4   where the someone else he actually had in mind was a sports
5   medicine doctor that worked for the Pittsburgh Steelers.
6   Finally, I have a letter in hand that said he wouldn't be able
7   to get to review my record until after the football season,
8   that was a little disconcerting.  So I've been trying to find
9   other firms.  I've asked my sister to check on the Internet,
10  she's given me a couple of names that I might be able to use.
11  The attorney in Pittsburgh also said that he would be willing
12  to forward my record to any firm that I chose to forward it to.
13  I've contacted a company in Altoona.  And they've stated that
14  they were not, would not work with the injured party or pro se
15  plaintiffs specifically, and they won't, they needed an
16  attorney.  So that's why I'm in the process of finding who I
17  can send this material to, to expedite this as fast as I can.
18          THE COURT:  Let me interrupt you.  Is it fair to say
19  at the present time you do not have any expert lined up and/or
20  counsel; is that right?
21          MR. NYHUIS:  Well, Freddie Fu, M.D., is willing to
22  do it.  I have letter from an attorney that is stating that
23  he's willing to do it.  And his name is Freddie H. Fu, M.D.,
24  and I have an address and phone number.  If you need this
25  letter, I guess this can be faxed to your office.

1   THE COURT: I don't need the letter right now, Mr.
2 Nyhuis. This is a doctor that allegedly works for the
3 Pittsburgh Steelers?
4   MR. NYHUIS: Who actually treats them for sports
5 injuries.
6   THE COURT: All right, read the letter to me?
7   MR. NYHUIS: "Per your request, this office was able
8 to locate an appropriate medical expert for a complete
9 review --
10   THE COURT: Mr. Nyhuis, slow down for the court
11 reporter, read it again?
12   MR. NYHUIS: I'm sorry. "Per your request, this
13 office was able to locate an appropriate medical expert for a
14 complete review of your file. However, as a result of his
15 schedule, including his attendance to the Pittsburgh Steelers
16 during the current football season, he will be unable to review
17 your file and offer an opinion until the end of the same.
18 Specifically, this physician I am referring to is Freddie Fu,
19 M.D., at 3200 South Water Street, Pittsburgh, Pennsylvania.
20 Phone number, 412-432-3600. I hope this information assists
21 you in the continued preparation to your case and any request
22 you made need for a continuance. If you have any questions
23 please do not hesitate to call." Do you want the attorney's
24 name?
25   THE COURT: Who is it?

1            MR. NYHUIS:  Brad N. Sommer.
2            THE COURT:  But he's not representing you, is that
3  right?
4            MR. NYHUIS:  He's helping to facilitate getting the
5  report.
6            THE COURT:  What does that mean, who is going to pay
7  for it?
8            MR. NYHUIS:  I am.  I'm borrowing money, I already
9  made arrangements for the money to be sent to whoever we find
10 to do this report.
11           THE COURT:  All right.  Is there anything else you
12 want to say, Ms. Wiegand?
13           MS. WIEGAND:  Your Honor, I would just note the
14 defendant had appointed counsel who did contact an expert
15 agency, and the government's position would be that he had
16 ample opportunity to obtain an expert report.  And that he
17 should not be given additional time.
18           MR. NYHUIS:  May I respond?
19           THE COURT:  Yes, and then I'm going to do an order.
20 Go ahead, sir.
21           MR. NYHUIS:  I never had a chance to communicate
22 with this counsel, I had no participation --
23           THE COURT:  You had very good counsel appointed.
24           MR. NYHUIS:  I understand.  He never communicated
25 with me so I knew what was going on.

1  THE COURT: All right, this is an order.
2  ORDER
3  Presently pending before the court is the
4  defendant's renewed motion for summary judgment. As well as
5  the plaintiff's motion for enlargement of time to obtain and
6  file a medical report. By way of background, the United States
7  filed a motion for summary judgment and supporting brief on
8  March 22, 2004. The government's motion was largely premised
9  upon a failure of the defendant to have secured an expert
10 report to substantiate his claims of medical negligence.
11 On July 22, 2004, through the efforts of this court, counsel
12 was obtained for the plaintiff. Specifically, Alan Natalie,
13 Esquire, was requested to serve and agreed to do so. By Report
14 and Recommendation dated July 22, 2004, that appointment was
15 confirmed. Also, at that time the Magistrate Judge recommended
16 that the summary judgment motion be dismissed without
17 prejudice, so as to give appointed counsel the necessary time
18 to obtain an expert report. The clerk at that time was also
19 directed to provide copies of all documents contained in the
20 plaintiff's file to Mr. Natalie within 20 days. I adopted the
21 Magistrate Judge's Report and Recommendation by order dated
22 July 30, 2004.
23 On August 13th of 2004, a telephonic status
24 conference was held before me. At that time Attorney Natalie
25 informed the court that he had provided medical records to a

medical consultative service that he had utilized in the past and asked for an opinion as to whether there was a deviation from the accepted standard of care with respect to the plaintiff's medical treatment. He informed me at that time that he had received a verbal report from the expert service indicating that there was no deviation from the standard of care, and further advised that he expected to receive a written report confirmatory of the same. He also indicated during the course of that status conference that he would not be listing any medical expert for trial and conceded the necessity of a medical expert at trial. I indicated on August 13th that I was initially going to grant the government's motion based upon Mr. Natalie's representations as to anticipated expert opinion. I chose at that time, however, out of an abundance of caution not to do so, and stated on the record:

"But I suppose the possibility always exists out there that people can change their mind and experts can change their mind. Until you actually have, what I'm going to direct you to do is that when you receive that report, assuming that it is consistent with what you've indicated, then advise the court in writing to that effect ...

Subsequent to written confirmation of the receipt of a written report, then upon a renewed motion for summary judgment, which may be nothing more than one line, I will then reconsider or consider the request at that time."

1    On September 24, 2004, I had the parties on the line
2    and took up Mr. Natalie's motion to withdraw as counsel and the
3    plaintiff's pro se motion to strike privileged information from
4    the record and motion for appointment of counsel.
5    Parenthetically, I should note that prior to that conference,
6    Attorney Natalie had filed a report from the expert service
7    confirming their oral opinion that no deviation from the
8    standard of care had occurred and the reasons therefore.
9    During the course of that hearing, I denied the plaintiff's
10   motion to strike, but directed that the report be sealed.  I
11   also denied the plaintiff's motion for appointment of yet
12   another counsel, as well as the plaintiff's motion -- excuse
13   me -- and granted plaintiff's motion for an extension of time
14   to obtain and file an expert report on his own.  And in that
15   regard I stated:
16   "This court is familiar with Mr. Natalie's work, and
17   it has always be exemplary.  And he did exactly what he was
18   requested to do, and that was go out and vigorously investigate
19   this and determine, at least by his lights, whether there was a
20   viable claim.  He did that.  And I reviewed your motion where
21   you were accusing him of this type of ethical violation and
22   that, and frankly, sir, I am aware of none ...
23   Let's get back to the point.  The point is, I am not
24   inclined to go out and try to find you yet another counsel on
25   this case.  I do not think I have an obligation to do that.  I

1  think that this court, as is proper for a pro se litigant, has
2  done it's best to bend over backwards to do what we've done so
3  far.
4       That having been said, and contrary to my original
5  statement that once Mr. Natalie received confirmation that the
6  report was unfavorable that the summary judgment would be
7  granted upon a renewed motion, out of an extreme abundance of
8  caution, and recognizing the difficulties that a pro se
9  litigant, particularly a pro se prisoner, faces in prosecuting
10 any piece of litigation, I am going to grant your request for
11 60 days within which to obtain an expert and file an expert
12 report in support of your claims."
13      I then went on and stated:
14      "However, I'm going to say this. At the conclusion
15 of 60 days, if we do not have that report, then, upon
16 appropriate motion from the government, the case is going to be
17 dismissed because it simply can't drag on forever."  That's at
18 pages four and five of the hearing of September 24, 2004,
19 document number 98.
20      As previously indicated, I now have before me the
21 second motion for summary judgment and plaintiff's motion for
22 an enlargement of time to obtain and file an expert report.  It
23 has now been approximately eight months since the United States
24 filed its motion, original motion for summary judgment.  And as
25 previously outlined, counsel was appointed and the deadlines

1  for obtaining an expert report were extended again and again.
2  Here, yet again, despite the previously-described extensions,
3  no expert report has been obtained and there is no guarantee
4  that one will be obtained.  In short, the truth of the matter
5  is that a case cannot be permitted to drift indefinitely.  To
6  do so is a waste of judicial resources and prejudicial to the
7  moving party.  No party can be permitted or should be permitted
8  to shop indefinitely for an expert to supply a favorable report
9  in support of a claim in a case like this.
10              For the foregoing reasons, the defendant's motion
11  for summary judgment is granted, the plaintiff's case is
12  dismissed with prejudice.  All right, thank you.
13
14              (Whereupon, at 1:13 p.m., the proceedings were
15  concluded.)
16
17                              - - -
18
19
20
21
22
23
24
25

1            <u>C E R T I F I C A T E</u>
2
3
4       I, Ronald J. Bench, certify that the foregoing is a
5  correct transcript from the record of proceedings in the
6  above-entitled matter.
7
8
9
10  _____
11  Ronald J. Bench